**Richard PAGANO, Plaintiff,**

v.

**BELL ATLANTIC–NEW JERSEY, INC. and Local 827, International Brotherhood of Electrical Workers AFL–CIO, Defendants.**

**No. CIV. 97–3771 WHW.**

United States District Court, D. New Jersey.

Dec. 19, 1997.

Steven Adler, Cole, Schotz, Meisel, Forman & Leonard, Hackensack, NJ, for Richard Pagano.

Alan G. Lesnewich, Terrence J. Nolan, Collier, Jacob & Mills, Somerset, NJ, for Bell Atlantic–New Jersey, Inc.

Paul M. Levinson, East Windsor, NJ, for Local 827, International Brotherhood of Electrical Workers AFL–CIO.

## OPINION

WALLS, District Judge.

Plaintiff Richard Pagano ("Pagano") brought suit against his former employer, Bell Atlantic–New Jersey, Inc. ("Bell Atlantic"), and his union, Local 827, International Brotherhood of Electrical Workers AFL–CIO ("Union" or "Local 827"). Plaintiff alleges that Bell Atlantic wrongfully dis-

charged him and that the Union breached its duty of fair representation ("DFR claim") by processing his grievance in a perfunctory manner and by not seeking arbitration. Before the Court is defendants' motion to dismiss all counts of the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because of untimeliness and preemption. Pagano opposes this motion and has filed a cross-motion for leave to amend his Complaint under Rule 15(a). The Court decides these motions without oral argument pursuant to Rule 78. For the reasons which follow, the Court dismisses the plaintiff's original Complaint but grants his motion to file an Amended Complaint against the Union which must be limited to his new allegation that the Union breached its duty of fair representation by failing to convey a settlement offer made by Bell Atlantic during negotiations.

## FACTUAL AND PROCEDURAL BACKGROUND

The following is a recital of the facts as they are set forth in plaintiff's original Complaint. Pagano was employed by Bell Atlantic for approximately twenty-two years before this controversy arose. Pagano and other Bell Atlantic employees were represented by Local 827, with whom Bell Atlantic had entered into a collective bargaining agreement ("CBA") effective May 21, 1995. Article XI of the CBA provides for a grievance procedure to address employee complaints. Article VIII states that once these grievance procedures have been exhausted, the Union may submit a claim for wrongful discharge without just cause to arbitration.

In April 1996, Pagano received a jury summons which notified him that he was required to serve on jury duty for the week beginning April 24. After serving on April 24 and April 25, Pagano was released when he informed the court that he had performed jury service within the last three years. The plaintiff did not work those two days and contends that his time sheets for those days reflected that he had been on jury duty.

On May 24, 1996, Pagano was terminated from his employment. He alleges that his supervisor discharged him based on a "mis-

844

understanding regarding [his] jury duty." Compl. ¶ 12. The Union proceeded to grieve the termination pursuant to the procedures outlined in the CBA. Pagano was not reinstated. He eventually was informed that the Union had declined to seek arbitration for his claim. His awareness of the Union's decision is reflected by a November 20, 1996 letter written by his counsel to the attorney representing the union wherein his counsel writes: "It is my understanding that the union grieved this matter for Mr. Pagano through a number of levels but failed to pursue his claims in arbitration."[1] Exh. A of Paul Levinson Certif. Pagano's counsel repeatedly urged the Union to arbitrate the matter but the Union refused.

Counsel for plaintiff also asked the Union to forward all documentation related to the Union's efforts to grieve Pagano's claim. In his brief and proposed Amended Complaint, Pagano contends that he did not receive responses to his requests for information until April 8, 1997, almost five months after the original request was delivered.

On June 18, 1997, Pagano filed a four-count Complaint against Bell Atlantic and Local 827 in the Superior Court of New Jersey. The First Count alleges that the Union breached its duty of fair representation by "processing Pagano's grievance in, at best, a perfunctory manner, failing to purposefully investigate the matter, refusing to engage in meaningful discussions with Bell Atlantic for purposes of seeking Pagano's reinstatement, and ultimately refusing to arbitrate his discharge . . . ." Compl. ¶ 20. The Second Count charges that Bell Atlantic breached the CBA by wrongfully discharging the plaintiff without just cause. The Third Count is for breach of the implied covenant of good faith and fair dealing, and the last count alleges breach of contract based on Bell Atlantic's failure to abide by its progressive disciplinary policy, a policy that plaintiff alleges is an implicit provision of the CBA. Defendants removed the case to this Court.

## LEGAL STANDARD

On a Rule 12(b)(6) motion, the court is required to accept as true all allegations in the Complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 (3d Cir.1994). The question is whether the plaintiff can prove any set of facts consistent with his allegations that will entitle him to relief, not whether he will ultimately prevail. Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

While a court will accept well-pleaded allegations as true for the purposes of the motion, it will not accept legal or unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegation. See Miree v. DeKalb County, Ga., 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977); Washington Legal Found. v. Massachusetts Bar Found., 993 F.2d 962, 971 (1st Cir.1993); Violanti v. Emery Worldwide A–CF Co., 847 F.Supp. 1251, 1255 (M.D.Pa.1994). Moreover, the claimant must set forth sufficient information to outline the elements of his claims or to permit inferences to be drawn that these elements exist. See Fed.R.Civ.P. 8(a)(2); Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

## ANALYSIS

I. *WHETHER THE CLAIMS FOR BREACH OF THE CBA AND BREACH OF THE DUTY OF FAIR REPRESENTATION ARE TIMELY*

■ Pagano has filed what is commonly referred to as a "hybrid suit" against his

1. Although this letter is not referenced in or attached to Pagano's Complaint, this Court may properly consider it to decide this Rule 12(b)(6) motion. It is well settled that a court may refer to "undisputably authentic documents" attached as exhibits to a defendant's motion to dismiss if plaintiff's "claims are based upon these documents[.]" *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 707 (3d Cir.1996); *see also In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d 357, 368 n. 9 (3d Cir.1993), *cert. denied*, 510 U.S. 1178, 114 S.Ct.

1219, 127 L.Ed.2d 565 (1994); *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir.1993), *cert. denied*, 510 U.S. 1042, 114 S.Ct. 687, 126 L.Ed.2d 655 (1994). Here, plaintiff's DFR claim is based upon the Union's alleged failure to vigorously pursue his claim, a matter referenced in this letter. Pagano does not dispute the authenticity of this document and does not argue that it should not be considered.

employer and Union. Such a suit technically consists of two causes of action. Pagano sues his employer under § 301 of the Labor Management and Relations Act ("LMRA"), 29 U.S.C. § 185, alleging that Bell Atlantic breached the CBA by discharging him without just cause. And the suit against the Union is one for breach of its duty of fair representation, an obligation implied under the scheme of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151 *et seq.* The two claims, however, are inextricably linked. "To prevail against either the company or the Union, ... [employee-plaintiffs] must not only show that their discharge was contrary to contract but also carry the burden of demonstrating a breach of duty by the Union." *DelCostello v. International Bhd. of Teamsters,* 462 U.S. 151, 165, 103 S.Ct. 2281, 2290, 76 L.Ed.2d 476 (1983) (quoting *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 570–71, 96 S.Ct. 1048, 1059–60, 47 L.Ed.2d 231 (1976)). This is so because a hybrid suit is essentially a challenge to private settlements reached pursuant to collective bargaining agreements. *See id.*

■ "A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967). If a union arbitrarily ignores a meritorious grievance or "process[es] it in perfunctory fashion," the Union may be found to have violated its implied statutory obligation. *Id.* at 191, 87 S.Ct. at 917. This does not mean that an employee has an absolute right to have his grievance taken to arbitration. *See id.; see also Fajardo v. Foodtown Supermarkets,* 702 F.Supp. 502, 506 (D.N.J.1988). Rather, it means that an employee will have a claim against his union for "conduct which is so acutely perfunctory that it fails to attain a basic level of acceptable performance by a collective bargaining unit." *Rupe v. Spector Freight Systems, Inc.,* 679 F.2d 685 (7th Cir.1982). Pagano alleges that Local 827 breached its obligations to him by engaging in a perfunctory review of his grievance, by failing to exercise the required level of diligence in pursuing his complaint against Bell Atlantic, and by ulti-

mately refusing to arbitrate his claim. *See* Compl. ¶ 20.

In *DelCostello v. International Bhd. of Teamsters,* the Supreme Court recognized that a six-month statute of limitations governs such hybrid claims. The Supreme Court "borrowed" the six-month period of § 10(b) of the NLRA, the time limit to bring charges of unfair labor practices before the National Labor Relations Board ("NLRB"), because the NLRB has consistently held that breaches of a union's duty of fair representation are unfair labor practices. *See DelCostello,* 462 U.S. at 170–71, 103 S.Ct. at 2293–94 (six-month limitations period strikes "the proper balance between the national interests in stable bargaining relationships and finality of private settlements, and an employee's interest in setting aside what he views as an unjust settlement under the collective-bargaining system"). The six-month limitations period applies to claims against the union and the employer. *See id.* at 155, 103 S.Ct. at 2285. This time limit "is applicable to cases which have not proceeded to arbitration upon the allegation that a particular Union failed to file a grievance, improperly handled it, or prevented the grievance from being processed further." *See Fajardo,* 702 F.Supp. at 507.

■ The limitations period "begins to run 'when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation.'" *Hersh v. Allen Prods. Co., Inc.,* 789 F.2d 230, 232 (3d Cir.1986) (quoting *Metz v. Tootsie Roll Indus., Inc.,* 715 F.2d 299, 304 (7th Cir.1983), *cert. denied,* 464 U.S. 1070, 104 S.Ct. 976, 79 L.Ed.2d 214 (1984)); *see also Vadino v. A. Valey Engineers,* 903 F.2d 253, 260 (3d Cir.1990). In a claim charging failure to vigorously prosecute a grievance, this period commences "when 'the plaintiff receives notice that the union will proceed no further with the grievance.'" *Hersh,* 789 F.2d at 232 (quoting *Bruch v. United Steelworkers of America,* 583 F.Supp. 668, 670 (E.D.Pa.1984)); *see also Vadino,* 903 F.2d at 260. The statute of limitations for the claim against the employer is also "tolled until it was or should have been clear to the employ-

ee that the union would not pursue the grievance." *Vadino,* 903 F.2d at 261.

■ The parties dispute when this cause of action accrued for statute of limitations purposes. Defendants argue that the clock began to run at the latest on November 20, 1996, the date on when counsel for Pagano sent the Union's attorney a letter indicating that he was aware that the Union had failed to arbitrate his client's grievance. According to the defendants, this letter unequivocally demonstrates that Pagano was informed at some earlier date that Local 827 would not pursue his claim any further. Pagano counters that the limitations period should be tolled until April 8, 1997, the date on which his counsel finally received, after numerous requests, documents that revealed that Local 827 had given only cursory attention to his grievance and had failed to pursue it with the required diligence. The plaintiff contends that he did not possess the necessary information upon which to base his DFR claim until he attained this material. Pagano emphasizes that his Complaint is based not only on the Union's failure to arbitrate his grievance but also on its perfunctory and inadequate processing of the grievance which ultimately culminated in the decision not to arbitrate. He concludes that he did not know the basis of the Union's breach until he received the sought after documents in April and that the cause of action therefore arose at that point.

A court must employ a case-by-case analysis to determine when the statute of limitations begins to run. *See Scott v. Local 863, Int'l Bhd. of Teamsters,* 725 F.2d 226, 228 (3d Cir.1984); *Downey v. United Food and Commercial Workers Union Local 1262,* 946 F.Supp. 1141 (D.N.J.1996). Here it is undisputed that Pagano was aware that the Union would not pursue arbitration and had no intention to proceed any further with his grievance no later than November 20, 1996. The Third Circuit has clearly articulated that this is the point when a hybrid cause of action accrues. That Pagano later received documents to bolster his claim that the Un-

ion had improperly pursued his cause does not serve to toll the statute of limitations. If it did, an employee could indefinitely delay bringing suit as he collects additional information bearing some relevance to his claim. This would allow a plaintiff to toll perpetually the six-month limitations period and would undermine the Supreme Court's clear purpose to limit the time in which such suits must be brought. Tolling the statute of limitations while the plaintiff gathers information to support his claim would create undesirable uncertainty as to when such claims accrued.

Pagano learned that the Union did not intend to pursue his grievance any further sometime before November 20, 1996. At that point, he was represented by counsel who was already contemplating a suit against the Union.[2] Counsel should have been well aware of the applicable statute of limitations. Pagano could have brought suit at that time and then later attempted to obtain supporting documents through discovery. He followed a different course and failed to file this action until June 18, 1997, more than six months after he was aware that the Union had abandoned its efforts to represent him in this matter. The § 301 claim against Bell Atlantic and the DFR claim against the Union are thus barred by the statute of limitations.

## II. *WHETHER COUNTS THREE AND FOUR ARE PREEMPTED*

■ The Third Count of plaintiff's Complaint alleges that Bell Atlantic violated the implied covenant of good faith and fair dealing by abruptly firing Pagano without just cause. In the Fourth Count, he charges that Bell Atlantic breached the CBA by failing to act in accordance with its own internal progressive disciplinary policy, the terms of which Pagano contends are an implicit provision of the CBA. Defendants maintain that these state law causes of action are preempted by § 301 of the LMRA. The Court agrees.

Section 301 of the LMRA preempts state law claims that allege violations of a collective bargaining agreement. *See* 29 U.S.C.

---

2. The correspondences from Pagano's counsel to the Union, including the November 20, 1996 letter, clearly indicate that Pagano was contem-

plating for sometime bringing a suit for breach of the duty of fair representation. *See* Exh. D of Compl. and Exh. A of Paul Levinson Certif.

§ 185; *Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 103–04, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962). Moreover, "when the resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, the claim must either be treated as a § 301 claim ... or dismissed as pre-empted by federal labor-contract law." *Allis–Chalmers Corp., v. Lueck,* 471 U.S. 202, 220, 105 S.Ct. 1904, 1915, 85 L.Ed.2d 206 (1985).

■ Resolution of the state law claims in Counts Three and Four requires the Court to interpret the CBA. To determine whether Bell Atlantic breached its duty of good faith and fair dealing by terminating Pagano from his employment, the Court must inquire whether there was "just cause" to terminate him under the Agreement. In addition, any decision regarding whether the company's internal disciplinary policy was an implicit provision of the CBA would also obviously entail an analysis of the scope and content of the Agreement. To allow Pagano to bring these claims as state law actions would not comport with the Supreme Court's explicit directive to resolve disputes concerning collective bargaining agreements under federal labor law instead of under state law. *See Lucas Flour Co.,* 369 U.S. at 103, 82 S.Ct. at 576. Because § 301 preempts Counts Three and Four, these counts must be dismissed.[3]

## III. *WHETHER PAGANO SHOULD BE GRANTED LEAVE TO AMEND HIS COMPLAINT*

■ Fed.R.Civ.P. 15 governs the amendment of pleadings. Rule 15(a) provides that once a response to a party's pleading is served, that pleading may be amended only by leave of court or by written consent of the adverse party. The rule further provides that leave to amend a pleading "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). A general presumption exists in favor of allowing a party to amend its pleadings. *Boileau v. Bethlehem Steel Corp.,* 730 F.2d 929, 938 (3d Cir.), *cert. denied,* 469 U.S. 871, 105 S.Ct. 221, 83 L.Ed.2d 150 (1984). Leave to amend a complaint should be granted freely in the absence of undue delay or bad faith on the part of the movant as long as the amendment would not be futile and the opposing party would not suffer undue prejudice. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Adams v. Gould Inc.,* 739 F.2d 858, 864 (3d Cir.1984), *cert. denied,* 469 U.S. 1122, 105 S.Ct. 806, 83 L.Ed.2d 799 (1985). "Amendment of the complaint is futile if the amendment will not cure the deficiency in the original complaint or if the amended complaint cannot withstand a renewed motion to dismiss." *Jablonski v. Pan American World Airways, Inc.,* 863 F.2d 289, 292 (3d Cir.1988).

■ Pagano's proposed Amended Complaint differs from the original Complaint in two respects. First, it alleges that the plaintiff did not learn of the nature and extent of the Union's perfunctory processing of his grievance until April 8 when he received certain documents from the Union. *See* Amended Compl. ¶ 20. As expressed above, the Court has found that this belated revelation does not toll the statute of limitations for plaintiff's DFR claim that the Union improperly handled his grievance. Consequently, paragraph 20 of the Amended Complaint is futile because it does not cure the timeliness defect of the original claim.

■ Pagano also asserts in his Amended Complaint a newly discovered basis for his claim that the Union breached its duty of fair representation. He alleges that during negotiations, Bell Atlantic offered Pagano, through the Union, a clerical position to attempt to settle the dispute. *See id.* ¶ 16. Pagano claims that the Union failed to communicate to him this offer of employment. *See id.* ¶¶ 16, 23. It is plaintiff's contention that he first learned of this settlement offer

---

**3.** Pagano argues that it is premature to dismiss Counts Three and Four and requests an opportunity to conduct discovery in order to show that resolution of these claims do not require construing the CBA. The Court rejects this request and fails to understand how discovery could show that these claims are not inextricably intertwined with the terms of the CBA.

The Court also notes that if it were to treat these counts as § 301 claims, they still would be dismissed as untimely.

in September 1997 while conducting investigation related to this action. *See id.* ¶ 16.

The Court finds that this new allegation by plaintiff that the Union breached its duty of fair representation through its failure to convey Bell Atlantic's job offer forms an independent basis for a cognizable DFR claim. A union's failure to convey a settlement offer presented by an employer during negotiations may alone constitute a breach of its duty of fair representation if it is established that this conduct was arbitrary, discriminatory, or in bad faith. *See Jenkins v. Nettles,* 1997 WL 499932, at *2 (4th Cir. Aug.25, 1997) (per curiam) (court grants summary judgment to union but acknowledges that union president's failure to inform plaintiff employee of the company's offer to return him to his job could form the basis for a cognizable DFR claim if evidence showed that this nondisclosure was arbitrary and in bad faith); *Perry v. Chrysler Corp.,* 1978 WL 1633, at * 7 (E.D.Mich. Mar.1, 1978) (recognizing "the Union's responsibility to inform grievants of settlement offers"). Pagano does allege that the Union's nondisclosure was arbitrary, capricious, and in bad faith. *See* Amended Compl. ¶ 23. This charge may be considered separate from plaintiff's claim that Local 827 failed to diligently pursue his grievance even though both allegations are plead in the same DFR claim (First Count) in the Amended Complaint.

Under the well accepted discovery rule, a DFR claim based on the Union's failure to inform Pagano of this job offer would not have accrued until Pagano was aware, or reasonably should have been aware, of the Union's nondisclosure. *See Oshiver,* 38 F.3d at 1386. This is analogous to claims of fraud where the "knew or should have known" tolling principle applies. Pagano claims that he did not become aware of the Union's failure to convey the job offer until September 1997. If this is true and Pagano shows that he could not have reasonably known of the Union's omission before this date, his DFR claim would not be barred by the statute of limitations. The Court also notes that Pagano's charge that the Union breached its duty by failing to communicate the job offer is not a "hybrid" action and thus would prob-ably not be governed by the six-month limitations period in any event. Thus, the Court will grant plaintiff leave to file an Amended Complaint which asserts a DFR claim based solely on the Union's alleged failure to convey Bell Atlantic's job offer.

## CONCLUSION

For the foregoing reasons, the Court dismisses all counts of plaintiff's original Complaint on the grounds of untimeliness and preemption but grants the plaintiff leave to file an Amended Complaint alleging that Local 827 breached its duty of fair representation through its failure to convey to him a job offer presented by Bell Atlantic during negotiations.

**SO ORDERED.**