789 F.2d 230
 122 L.R.R.M. (BNA) 2730, 104 Lab.Cas. P 11,959
 HERSH, Denise M., Appellant,
v.
ALLEN PRODUCTS COMPANY, INC. d/b/a Alpo Pet Products, and
Teamsters, Chauffeurs, Warehousemen and Helpers of
America Local Union # 773, Appellee.
 No. 85-1027.
 United States Court of Appeals,
Third Circuit.
 Argued Sept. 9, 1985.
Decided April 30, 1986.
 
 Edward R. Eidelman, (argued), Stamberg & Caplan, Allentown, Pa., for appellant.
 Stephen C. Richman (argued), William T. Josem, Markowitz & Richman, Philadelphia, Pa., for appellee Teamsters, Chauffeurs, Warehousemen and Helpers of America Local Union # 773.
 Larry J. Rappoport (argued), Hayes & Feege, P.C., Allentown, Pa., for appellee Allen Products Co., Inc. d/b/a Alpo Pet Products
 Before HUNTER, GARTH, and HIGGINBOTHAM, Circuit Judges.
 OPINION OF THE COURT
 GARTH, Circuit Judge:
 
 
 1
 Denise M. Hersh brought this action against her employer, Allen Products Company, Inc., d/b/a Alpo Pet Products ("Alpo") and Local 773 of the Teamsters, Chauffeurs, Warehousemen and Helpers of America ("Union") under section 301 of the Labor Management Relations Act, 29 U.S.C. Sec. 185. In her complaint, Hersh alleged that her October 5, 1983 discharge by Alpo violated the terms of its collective bargaining agreement with the Union and that the Union breached its duty of fair representation owed Hersh by failing to process her grievance to arbitration pursuant to the grievance procedures established by the collective bargaining agreement. Alpo and the Union filed motions for summary judgment claiming that Hersh's cause of action was barred by the six-month statute of limitations prescribed by the Supreme Court in DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983).[1] The two defendants also filed a counterclaim for attorney's fees against Hersh, alleging that Hersh's suit was frivolous and brought in bad faith.
 
 
 2
 The district court ruled that Hersh's claim was barred by the statute of limitations, and accordingly granted summary judgment in favor of Alpo and the Union on her section 301 and duty of fair representation claims. The district court ruled against Alpo and the Union on their attorney's fees counterclaim.
 
 
 3
 Hersh appealed from the district court's summary judgment order. No cross-appeal was filed by the defendants respecting their counterclaim. We reverse the district court's order granting summary judgment.
 
 I.
 
 4
 Denise Hersh was employed as a packing line operator by Alpo from June 28, 1977 to October 5, 1983. At all times pertinent to this litigation, a collective bargaining agreement containing detailed attendance and disciplinary provisions was in effect between Alpo and the Union, of which Hersh was a member. The terms of the agreement provided that employees were assessed a specified number of points for lateness or unauthorized absences. When an employee accumulated thirty five (35) or more points during a given twelve (12) month period, the employee was subject to disciplinary measures, including discharge. Employees were permitted to challenge the assessment of points through the grievance provisions of the agreement.
 
 
 5
 Hersh had accumulated 32 points by October 1983. On October 5, 1983, she was assessed seven (7) additional points for an October 3, 1983 absence thereby bringing her point total to 39, four points over the limit permitted by the agreement. Accordingly, she was notified on October 5 that she would be discharged. That same day, Hersh filed a grievance pursuant to the collective bargaining agreement alleging that she had been improperly discharged. Earlier in 1983, Hersh had filed similar grievances challenging the assessment of points against her by Alpo. As of October, 1983, these previous grievances had neither been processed nor resolved.
 
 
 6
 On October 19, 1983, all of Hersh's grievances were considered at a third step grievance meeting between Hersh and representatives of Alpo and the Union. During that meeting, the Union representative. Robert Seng, privately met with Hersh in the hallway. In the course of their discussion, Seng allegedly told Hersh that "it did not look like the Alpo representatives would change their mind [about her grievances and discharge]." (Hersh, Aff. p 4; see Hersh Dep. 23-24).
 
 
 7
 At this point, the record becomes unclear as to what exactly transpired next. According to Alpo and the Union, Hersh received notice at the October 19 hallway meeting that Alpo had denied her grievances and that the Union had refused to process them through to arbitration. Hersh, on the other hand, contended that she received no notice on October 19 that her grievances had been denied and that she left that meeting believing her grievances were still pending. She also claimed that she affirmatively told the Union representative that she desired arbitration if she lost her grievances. Until she received a copy of the collective bargaining agreement from the Union in May 1984, Hersh claimed, she did not know that the time for arbitration had expired.
 
 
 8
 What is clear from the record, however, is that the Union filed no affidavits supporting the summary judgment motions and that neither the Union nor Alpo at any time provided Hersh with written notice of the denial of her grievances or of the Union's refusal to proceed to arbitration.
 
 
 9
 On June 12, 1984, Hersh filed the present action against Alpo and the Union. Both Alpo and the Union moved for summary judgment, arguing that Hersh's cause of action accrued on October 19, 1983 and was accordingly barred by the sixth-month limitations period established by DelCostello. As noted, the district court agreed with the statute of limitations argument, and granted summary judgment on that issue in favor of Alpo and the Union. It was from that order that Hersh appealed.
 
 II.
 
 10
 Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, Adickes v. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) and must resolve all reasonable doubts as to the existence of a genuine issue of material fact against the movant. In reviewing a district court's grant of summary judgment, we apply the same standards as the district court. Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir.1976), cert. denied, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977); see Koshatka v. Philadelphia Newspapers, Inc., 762 F.2d 329, 333 (3d Cir.1985).
 
 
 11
 The sole question before the district court was whether there existed an issue of material fact as to whether Hersh's complaint was barred by the applicable six-month statute of limitations established in Del Costello v. International Brotherhood of Teamsters, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983) for section 301 and duty of fair representation actions. It is undisputed by the parties that the six-month period begins to run "when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation." Metz v. Tootsie Roll Industries, Inc., 715 F.2d 299, 304 (7th Cir.1983), citing Hungerford v. United States, 307 F.2d 99, 102 (9th Cir.1962). In applying the so-called "Hungerford Rule" to section 301 actions, courts have held that the statutory period begins to run when "the plaintiff receives notice that the union will proceed no further with the grievance." Bruch v. United Steelworkers of America, 583 F.Supp. 668, 670 (E.D.Pa.1984).
 
 
 12
 Thus, the issue before the district court, and the issue which we confront on appeal, is whether Hersh "discovered, or in the exercise of reasonable diligence should have discovered prior to December 12, 1983 (six months prior to the filing of this action) that her grievance had been denied and that the Union did not intend to pursue the matter to arbitration." District Court opinion at App. 204-05.
 
 III.
 
 13
 The district court in granting summary judgment for Alpo and the Union necessarily had to conclude that the record disclosed no material dispute of fact as to when Hersh discovered that her grievances had been finally denied and that no further process for relief was available to her. Thus, the district court's ruling in favor of Alpo and the Union must be construed as a finding that Hersh's verified complaint, affidavit, and deposition conclusively demonstrated that Hersh received actual notice both of the Alpo denial of her grievances and the Union's intention not to proceed to arbitration on October 19, 1983. We cannot agree that the record reveals this.
 
 
 14
 Both Alpo and the Union contend that Hersh's complaint and testimony on deposition are sufficient without more to establish the uncontradicted fact that October 19, 1983 is the date from which the six-month statute of limitations must be measured. Both defendants rely on paragraph 21 of Hersh's complaint which alleges that all three of her grievances "were considered and denied" at the October 19 meeting. Paragraph 22 then goes on to state:
 
 
 15
 Mrs. Hersh requested that the Union process these grievances, including her discharge through arbitration. The Union by and through its agents summarily refused to take any further action.
 
 
 16
 Although this paragraph does not indicate exactly when the Union "summarily refused" to process her grievance to arbitration, Alpo and the Union contend, and the district court determined, that the "only conclusion possible is that she received notice as of October 19, 1983." District Court opinion at App. 207. However, an examination of the affidavits and Hersh's testimony on deposition does not reveal a date certain on which she received the requisite notice. Rather, the record reveals a serious factual dispute as to the date when Hersh's cause of action accrued.
 
 
 17
 While paragraph 21 of Hersh's complaint admittedly recites that her grievances were denied at the October 19 meeting, that circumstance is not responsive to nor does it resolve the issue. First, it does not establish that Hersh knew as of that date that her grievances were denied. Rather, her affidavit supports her contention that she believed her grievances were still pending at the time she left the place where Alpo and the Union representatives were holding their meeting.
 
 
 18
 During the hallway discussion with Seng, her Union representative, Hersh told him that "if I lost I would want to take it to arbitration." Hersh Aff. p 4. The conditional statement, "if I lost," is eloquently indicative of Hersh's uncertainty at that time as to the ultimate disposition of her grievances. Further, Hersh's affidavit reciting that Seng told her "it did not look like" the company would rule in her favor, is also consistent with the view Hersh expressed that she did not know her grievances had been finally denied when she left the hallway meeting. These statements, combined with the undisputed fact that neither the Union nor Alpo ever provided Hersh with written notice of the denial of her grievances as required by the collective bargaining agreement, without more create a material issue of fact as to whether Hersh was actually notified of the final denial of her grievances on October 19, 1983 so that the statute of limitations may be said to have run from that date.
 
 
 19
 Hersh's sworn statements respecting her demand for arbitration are even more supportive of her position. The district court inferred from paragraph 4 of Hersh's affidavit that "she requested the Union to proceed to arbitration at the meeting on the 19th." District Court opinion at App. 206. However, as discussed above, Hersh swore that she wanted the Union to take her grievance to arbitration if she lost. Hersh Aff. p 4. Given the ambiguity as to whether Hersh knew on October 19, 1983 that she had in fact "lost," her unanswered demand for arbitration (a demand yet to be refuted by the Union) reinforces her argument that summary judgment could not issue in favor of the defendants.
 
 
 20
 Further, Hersh's depositional testimony regarding her October 19, 1983 discussion of arbitration with Seng, the Union representative, which has been characterized by the defendants and the district court as conflicting, does not compel a conclusion that Hersh knew on October 19, 1983 that the Union would not process her grievances to arbitration. Initially, Hersh testified in her deposition that she did not recall being told by Seng during the October 19 hallway discussion that the Union would not pursue her grievance to arbitration. She further denied that any "discussion" of arbitration occurred at that meeting. Hersh Dep. 23-24. Later in her deposition, Hersh testified that during that same hallway discussion, she had in fact requested the union to take her case to arbitration. Hersh Dep. 60-61. However, this "contradiction," if contradiction it is, only bears on whether Hersh "discussed" or "demanded" arbitration during the October 19 dialogue with Seng.
 
 
 21
 A fair reading of Hersh's testimony, with inferences drawn in favor of Hersh as the non-movant,[2] clearly supports her contention that during her discussion with Seng, Hersh still was not certain about the ultimate status of her grievances, and that she still believed the company might rule in her favor. Hersh Dep. 61-62. Hersh testified that her demand for arbitration was conditioned on the possibility that she might lose her grievances before the company. Hersh's testimony throughout her deposition is consistent with the fact that she at no time during her hallway meeting with Seng knew the final result of the third step grievance hearing that was still continuing between representatives of the Union and Alpo.
 
 
 22
 Representative of her knowledge at that time is her testimony taken at her deposition of September 19, 1984:
 
 
 23
 Q. [by Union attorney] When you said to--to them in the hallway, that you wanted to go to arbitration if the union--if the company denied your grievance, what was the response?
 
 
 24
 A. [Hersh] That's when Mr. Seng stated, well, he didn't feel there was anything further that he could do at that point. And I assumed well, he was going to go back in and see what the company was going to decide on these grievances.
 
 
 25
 Q. So you mean you knew at that time that he wasn't going to take it to arbitration?
 
 
 26
 A. I didn't know for sure. Because the grievances weren't settled.
 
 
 27
 Q. You just said there wasn't anything further that he could do.
 
 
 28
 A. At that point, until they decided what they were going to do with the grievances.
 
 
 29
 Hersh Dep. 62.
 
 
 30
 Thus the record reveals that as of October 19, 1983, Hersh did not know that her grievances, including her discharge grievance, had been finally and definitively denied. Nor did she know that all avenues to obtain relief, in particular, arbitration, had been closed. The Union had at no time told her that it would not proceed to arbitration and Hersh could reasonably assume that arbitration was the next step to be pursued. In this respect, she unequivocally stated under oath that she desired arbitration if her grievances were lost or denied. This statement has never been contradicted, nor, as pointed out, was there ever an affirmative statement made to her by the Union that arbitration would not be demanded on her behalf.
 
 
 31
 It is true that Hersh claimed on deposition not to have discussed arbitration. But her answer in the context in which she was asked the question, cannot be deemed inconsistent with her earlier statement that she demanded arbitration. To highlight the distinction between "discussion", on the one hand, and "demand," on the other, one need only consider the following hypothetical dialogue:
 
 
 32
 Q. Did you demand arbitration?
 
 
 33
 A. Yes.
 
 
 34
 Q. Did you discuss arbitration?
 
 
 35
 A. No.
 
 
 36
 Q. How do you reconcile these two apparently contradictory answers?
 
 
 37
 A. Simply. I asked for arbitration. No one answered me, and nothing more was said about arbitration. Therefore, we did not discuss arbitration. Besides, not knowing that I had lost my grievances, there was nothing yet to discuss about arbitration.
 
 
 38
 Obviously, such a colloquy never took place during Hersh's deposition. Had these questions been asked, the record reveals that Hersh undoubtedly would have answered them in the fashion noted above because we read the actual record to that effect. We recognize that the only individual and party that could contradict Hersh's version of the October 19, 1983 discussion was Seng, the Union representative, and that no such contradiction appears in the record because the Union never filed any affidavits. Thus, drawing all inferences in favor of Hersh, at the least, the present record reveals that no notice of either the denial of Hersh's grievances or the refusal of the Union to take them to arbitration was ever made known to Hersh on October 19, 1983.
 
 IV.
 
 39
 As an alternative basis for its ruling, the district court held that even if Hersh did not on October 19, 1983 receive actual notice of the denial of her grievances and refusal of the Union to proceed to arbitration, her claim was nevertheless barred under the second prong of the "Hungerford Rule": whether in the exercise of reasonable diligence she should have discovered the acts constituting the alleged violation. In support of this ruling, the district court placed conclusive weight on Hersh's failure to communicate either with Alpo or the Union regarding the status of her case between October 19, 1983, the date of the hallway meeting, and December 12, 1983, the date six months prior to the filing of Hersh's action in the district court. To the district court, this failure to communicate was indicative of a lack of reasonable diligence as a matter of law. We cannot agree.
 
 
 40
 First, as the district court itself noted, Hersh testified that she telephoned Seng, her Union representative, several times during the less than two month interval between October 19 and December 12, 1983. She further testified that she may have left messages on those occasions. Hersh Dep. 28-29. Given the undisputed fact that it was incumbent upon the Union to notify Hersh of the denial of her grievances pursuant to the collective bargaining agreement, combined with Hersh's undisputed testimony that grievances filed as early as August 1983 were not resolved until October 1983, see Hersh Aff. p 9; Shirey Aff. paragraphs 8-9; Zacharda Aff. paragraphs 7-9, it cannot be said that Hersh's beliefs that the grievance process "moved very slowly" and that her grievances were still pending were indicative of an unreasonable lack of diligence precluding her claim as a matter of law. See Robertson v. Seidman & Seidman, 609 F.2d 583, 591-592 (2d Cir.1979) (that conflicting inferences may be drawn from the record rendering plausible either of two conclusions as to exercise of reasonable diligence in discovery of fraud renders district court's grant of summary judgment inappropriate).
 
 V.
 
 41
 Further proceedings, whether by trial or additional discovery and motions, are required in order to determine whether in fact Hersh's cause of action accrued on October 19, 1983. As we have discussed, that determination could not be made on this record as a matter of law. Viewing the evidence in the light most favorable to the non-moving party, material issues of fact have been raised regarding both Hersh's actual knowledge as of October 19, 1983 and the degree of reasonable diligence she exercised before December 12, 1983 in discovering whether her grievances had been denied or would be processed to arbitration. Since the district court erred as to both these matters, its grant of summary judgment in favor of Alpo and the Union must be reversed.
 
 
 42
 In doing so, we heartily endorse the district court's admonition that this entire controversy could have been avoided had either the Union or Alpo "followed the simple procedure of writing to or calling Mrs. Hersh with a final definite answer" regarding the denial of her grievance. District Court opinion at App. 210. The defendants' failure to do so here is rendered all the more inexcusable given the existence of just such a requirement in the collective bargaining agreement.
 
 
 43
 The judgment of the district court will be reversed, and the case remanded to the district court for further proceedings.
 
 
 
 [1]
 Alpo and the Union initially raised the statute of limitations as a defense in their Motions for Judgment on the pleadings. In light of factual issues raised by Hersh's responding affidavit, the district court denied those motions
 
 
 [2]
 Simply because the inconsistency giving rise to a material issue of fact occurs primarily or solely in a party's own sworn statements does not in itself enable the district court to resolve that inconsistency in the way most harmful to that party on a motion for summary judgment. Rather, the court must look to all the evidence in the record, and, viewing the evidence in the light most favorable to the non-moving party, determine if material issues of fact exist which preclude granting summary judgment